1   John Hobart Zentmyer
     P.O. Box 1512
2   Lakeside, California 92040
     619-749-0898
3   Plaintiff Pro Se

FILED
CLERK, U.S. DISTRICT COURT

JUN 2 5 2009

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

4

RECEIVED
BUT
NOT FILED

JUN 2 5 2009

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                  DEPUTY

5

6

7   UNITED STATES DISTRICT COURT

8   FOR THE CENTRAL DISTRICT OF CALIFORNIA

9   LOS ANGELES

10

11  John Hobart Zentmyer,     No. CV _____

         Plaintiff,       **PLAINTIFF'S MOTION TO VACATE**

12                 **JUDGMENTS VOID FOR LACK OF**
         v.           **SUBJECT MATTER JURISDICTION,**

13                 **U.S. CONST. ART. III, 2, CL. 1**
   UNITED STATES OF AMERICA,  Claim I: Ref. cause no. CR 03-337(B)-ABC

14                 Claim II: Ref. cause no. CV 05-02542-ABC
         Defendant.

15

16

17           **MOTION TO VACATE JUDGMENTS VOID FOR**
            **LACK OF SUBJECT MATTER JURISDICTION,**

18            **U.S. CONSTITUTION ARTICLE III, 2, CL. 1**

19     Pursuant to the Federal Rules of Civil Procedure (F.R.C.P.) rule 60(b)(4), Plaintiff hereby

20  moves the Court to vacate the judgments resulting from the causes in Claims I and II on the grounds

21  that they are void because the court suffered a complete want of Article III subject matter jurisdiction.

22  The court's jurisdiction over the actions brought by Defendant UNITED STATES OF AMERICA

23  (hereinafter "the Government") was wanting for the reasons more fully set forth in Plaintiff's accom-

24  panying Memorandum of Points and Authorities and as revealed by the appended Exhibits.

25

26                       Respectfully Submitted,

27

28                       John Hobart Zentmyer
                       Plaintiff Pro Se
                       June 23, 2009

1    John Hobart Zentmyer
     P.O. Box 1512
2    Lakeside, California 92040
     619-749-0898
3    Plaintiff Pro Se

4

5

6

7                  UNITED STATES DISTRICT COURT

8            FOR THE CENTRAL DISTRICT OF CALIFORNIA

9                     LOS ANGELES

10

11    John Hobart Zentmyer,           **PLAINTIFF'S MEMORANDUM OF**
                                   **POINTS AND AUTHORITIES IN**
12        Plaintiff,                **SUPPORT OF MOTION TO VACATE**
                                   **JUDGMENTS VOID FOR LACK OF**
13            v.                 **SUBJECT MATTER JURISDICTION**

14    UNITED STATES OF AMERICA,     **U.S. CONST. ART. III, 2, CL. 1**

15        Defendant.

16

                   **STATEMENT OF JURISDICTION**
17

       The district court's jurisdiction over this civil motion is granted by 28 U.S.C. 1331.
18

19    ///

20    ///

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

## CLAIM 1

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Argument:** Whether the accusations in the cause in Exhibit 1 fail to comply with the case-or-controversy requirement of Art. III, 2, cl. 1, creating a total want of subject matter jurisdiction and thereby resulting in void judgments? . . . . . . . . . 2

1.  F.R.C.P. rule 60(b)(4) applies to
    the judgments resulting from Exhibit 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2.  Exhibit 1 was presumed to lie
    outside the district court's jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3.  Exhibit 1 must comply with
    the case-or-controversy requirement of Article III . . . . . . . . . . . . . . . . . . . . 2

4.  Exhibit 1 has not established injuries in fact
    and therefore it cannot comply with Article III . . . . . . . . . . . . . . . . . . . . . . 3

5.  The judgments issued under Exhibit 1
    are presumed void . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6.  Count 3, <u>tax evasion,</u>
    fails to comply with Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7.  Counts 4 - 6, <u>evading reporting requirements,</u>
    fail to comply with Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8.  Counts 1 and 2, <u>influencing a financial institution,</u>
    fail to comply with Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9.  Plaintiff's Right to Due Process was violated . . . . . . . . . . . . . . . . . . . . . . . . 8

10. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11. Redress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## CLAIM II

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Argument:** Whether the judgment (order) in cause no. CV 05-02542-ABC is void . . . 11

1.  A judgment is void when the underlying cause
    lies outside the subject matter jurisdiction of the court . . . . . . . . . . . . . . . . 11

2.  Redress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                                    <u>**Page(s)**</u>

<u>Alabama Power Co. v. Ickes,</u>
     302 U.S. 464, 479 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Allen v. Wright,</u>
     468 U.S. 737, 750 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

<u>Boulware v. United States,</u>
     552 U.S. ___ (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Burnham v. Superior Court,</u>
     495 U.S. 604, 608 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

<u>Data Processing Service v. Camp,</u>
     397 U.S. 150, 152 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Independent Towers v. Washington,</u>
     350 F.3d 925 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Kokkonen v. Life Insurance Company of America,</u>
     511 U.S. 375, 377 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Lujan v. Defenders of Wildlife,</u>
     504 U.S. 555, 560 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Mansfield, C. & L. M. R. Co. v. Swan,</u>
     111 U. S. 379, 382 (1884) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Morrison v. CIR,</u>
     06-75332, (9th Cir. 5/13/2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Steel Co. v. Citizens for a Better environment,</u>
     523 U.S. 83, 103 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

<u>Valley Forge College v. Americans United,</u>
     454 U.S. 464, 472 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Watts v. Pinckney,</u>
     752 F.2d 406, 409 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Whitmore v. Arkansas,</u>
     495 U.S. 149, 155 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**<u>CONSTITUTIONAL PROVISIONS</u>**

Article III [Section 2 Clause 1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

Fifth Amendment (due process) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

iii

1

**FEDERAL STATUTES**

2

18 U.S.C. §1014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

3

26 U.S.C. §7201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 9

4

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

28 U.S.C. §2513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6

31 U.S.C. §5313(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

31 U.S.C. §5324(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

8

**FEDERAL RULES**

9

Federal Rules of Civil Procedure (F.R.C.P.) rule 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

10

F.R.C.P. Rule 60(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

11

12

**OTHER AUTHORITIES**

13

Black's Law Dictionary (8th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLAIM I

### INTRODUCTION

This submission is a civil motion to vacate the judgments in a separate action that were void because the underlying cause failed to comply with the case-or-controversy requirement of Article III (section 2 clause 1). The cause was merely colorable and therefore was neither civil nor criminal, instead simply being invalid (void ab initio). As a result, the judgments issued therein also were void, and Plaintiff herewith moves for vacatur of those judgments.

### BACKGROUND

Plaintiff was accused in a cause the Government termed a "Second Superseding Indictment" (Exhibit 1) of several nefarious acts committed in the furtherance of the offenses of (1) influencing a financial institution; (2) evading a tax, and (3) evading reporting requirements. Plaintiff appeared pro se, with retained counsel acting as advisory counsel, in a trial in November, 2004, and was found guilty on five of six counts. He filed a timely notice of appeal, ordered and paid for trial transcripts, self-surrendered and went to a minimum-security "camp" in April, 2005. The Government delayed his trial transcripts, so he filed a motion for release pending appeal, which was granted by the district court in March, 2006. He was released on a signature bond (no restrictions and no reporting), and filed his appeal in July, 2006. His appeal was ultimately denied in July, 2007 and a mandate subsequently issued. He re-entered custody at a low-security facility closer to his home in December, 2007, and was released to home confinement in February, 2009. He has since left BOP custody and is currently under supervised release.

At the time of trial, Plaintiff instinctively knew that the Government's submission was not within the ambit of the court's constitutional power, but neither he nor his retained counsel had developed the specific knowledge needed for articulating the relevant arguments. However, in the interim the reasons that the Government had no case were becoming increasingly apparent to Plaintiff, so during the intervening months he developed the requisite arguments and formulated the instant motion. This motion describes the fatal infirmities in the Government's cause in detail, and Plaintiff moves herein to vacate the judgments issued in that cause because they are void.

## ARGUMENT

**Whether the accusations in the cause in Exhibit 1 fail to comply with the case-or-controversy requirement of Art. III, 2, cl. 1, creating a total want of subject matter jurisdiction and thereby resulting in void judgments?**

**1. F.R.C.P. rule 60(b)(4) applies to the judgments resulting from Exhibit 1** even though it was the basis of a criminal proceeding because Exhibit 1 cannot lawfully initiate a case or controversy (sections 6 - 8, infra). The cause it presents is invalid because the paucity of its content places it outside constitutional power of the court. Id. Any judgment resulting from such a cause is void because "the judgment of a court lacking jurisdiction is void[.]"—Burnham v. Superior Court, 495 U.S. 604, 608 (1990). Such a judgment is neither civil nor criminal in character because there was no lawful subject matter to adjudicate. This lack of character of a void judgment obviates the need for a criminal rule parallel with civil rule 60(b)(4) because there are no criminal void judgments (or civil void judgments, for that matter). There are only void judgments, all of which have a single character—void. A void judgment that happens to be a criminal conviction must nonetheless fall within the ambit of rule 60(b)(4) because this rule applies to *all* void judgments, regardless of origin. Furthermore, the closed "case" itself has no relevance. Article III applies to its antecedent (Exhibit 1), which pre-dates its filing, and rule 60(b)(4) applies to its judgments, which survive its closing. Therefore, evaluation of the judgments resulting from Exhibit 1 under rule 60(b)(4) is lawfully initiated by the instant motion because it involves *only* vacatur of void judgments due to the lack of subject matter jurisdiction, which is a *civil* proceeding held in accordance with F.R.C.P. rule 1.

**2. Exhibit 1 was presumed to lie outside the district court's jurisdiction** ab initio because any cause is presumed to lie outside the power of the federal courts. If the moving party desires his cause to become a case or controversy and be adjudicated, he must establish otherwise.

> "Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution [Article III] and by statute [Congress], which is not to be expanded by judicial decree. It is presumed that *a cause lies outside this jurisdiction,* and the burden of establishing the contrary rests upon the party asserting jurisdiction."—Kokkonen v. Life Insurance Company of America, 511 U.S. 375, 377 (1994) (Citations omitted; emphasis and [bracketed material] added)

**3. Exhibit 1 must comply with the case-or-controversy requirement of Article III** for it to lie within the court's constitutional power because "Article III of the Constitution confines the federal courts to adjudicating 'cases' and 'controversies.'"—Allen v. Wright, 468 U.S. 737,

2

750 (1984). The requirements that apply to these cases and controversies are well settled. "[T]he triad of injury in fact, causation and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."—Steel Co. v. Citizens for a Better environment, 523 U.S. 83, 103 (1998). This injury in fact, which the cause must allege (and the Government must ultimately prove), is defined as "an invasion of a legally protected interest" that has resulted from "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant[.]'"—Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citation omitted). The lack of a case or controversy (Allen, supra) is a threshold jurisdictional defect that places a cause outside the constitutional power of the federal courts to adjudicate. "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Steel Co., supra, at 94 (quoting Mansfield, C. & L. M. R. Co. v. Swan, 111 U. S. 379, 382 (1884)). "'Without jurisdiction the court cannot proceed at all in any cause.'" Id. (Citation omitted). Clearly, if Exhibit 1 cannot be proven to contain the ingredients required for establishing a case or controversy, it is not lawfully justiciable and the judgments issued thereunder are void.

**4. Exhibit 1 cannot establish injuries in fact and therefore it cannot comply with the case-or-controversy requirement of Article III.** An injury in fact is palpable harm, Whitmore, infra, that must be traceable to the challenged action of the defendant through a causal connection. Lujan, supra. This injury is the threshold ingredient of an Article III case or controversy.

> "To establish an Article III case or controversy, a litigant first must clearly demonstrate that he has suffered an injury in fact. That injury, we have emphasized repeatedly, must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical."—Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (citations and internal quotation marks omitted)

Unless each count in Exhibit 1 clearly identifies the lawful interest being legally protected by the statute allegedly violated and *also* alleges that the challenged action invaded (palpably harmed) that protected interest (Lujan, supra), the Government cannot establish a case or controversy because "Art. III requires the party who invokes the court's authority to 'show that he person-

3

1  ally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the

2  defendant[.]'"—Valley Forge Christian College v. Americans United, 454 U.S. 464, 472 (1982)

3  (citation omitted).  Further, because the onus probandi is on the Government to prove that a case or

4  controversy exists (Steel Co., supra), Exhibit 1 is initially presumed to lack the required ingredients

5  and the Government must rebut the presumption to move forward (Kokkonen, supra). Although

6  Exhibit 1 is cleverly disguised as a criminal case, it lacks lawful injuries in fact (sections 6 - 8, in-

7  fra),[1] which places its accusations outside the case-or-controversy requirement of Article III (Whit-

8  more, supra). Therefore, Exhibit 1  is only colorable, and thus it cannot be classified as an indict-

9  ment or as any other type of civil nor criminal case. It is merely a cause, as so termed in Kokkonen,

10  supra, that is invalid because it is insufficient for establishing jurisdiction (Steel Co., supra, at 94).

11  **5. The judgments issued under Exhibit 1 are presumed void** because any cause is pre-

12  sumed to lie outside the power conferred by Article III and by Congress (Kokkonen, supra) un-

13  less proven otherwise. The threshold jurisdictional defects in Exhibit 1 are facial (sections 6 - 8,

14  infra), which renders the cause itself void ab initio because it is insufficient for invoking jurisdic-

15  tion (Steel Co., supra, at 94). A judgment issued in such a cause is void because "the judgment of

16  a court lacking jurisdiction is void[.]" Burnham, supra. Therefore, because the Government can-

17  not prove that Exhibit 1 lies within the court's constitutional power (sections 6 - 8, infra), the

18  judgments issued thereunder actually are void.

19  **6. Count 3, tax evasion (Exhibit 1, pp. 4, 5), fails to comply with Article III.** The injury

20  in fact (Lujan, supra) asserted in count 3 is a tax deficiency, which allegedly resulted from Plain-

21  tiff's failure to pay a tax when it was due. The crime claimed in count 3 is that Plaintiff willfully

22  acted to evade payment of this tax, in violation of Title 26, United States Code (U.S.C.), section

23  7201.[2] However, although §7201 is the only U.S.C. section contained in all of count 3, it does not

24  impose a tax, assess a tax or require payment of a tax. §7201 is simply an omnibus enforcement

25  section that criminalizes evading internal revenue taxes, but it applies to "any tax" imposed in all of

---

26  [1] This motion is essentially challenging the *application* of the statutes contained in Exhibit 1 because the alle-
27  gations in which they appear lack the factual and/or legal basis needed for lawfully creating cases or controversies.

[2] 26 U.S.C. §7201. Attempt to evade or defeat tax. "Any person who willfully attempts in any manner to
28  evade or defeat *any tax* imposed by this title or the payment thereof shall, in addition to other penalties provided by
law, be guilty of a felony and, upon conviction thereof, shall [receive the following penalty]." (Emphasis added)

4

1   Title 26 rather than only to a specific section (n. 2). Therefore, if the asserted deficiency actually

2   did result from an operation of law, count 3 must disclose the law that allegedly operated[3] *and* this

3   operation proven before §7201 is applicable. "There is no criminal tax evasion without a tax defi-

4   ciency."—Boulware v. United States, 552 U.S. ____ , 2008 (per curiam). Clearly, affirmative proof

5   that the deficiency determination turned on a specific operation of law (n. 3) is antecedent to adju-

6   dicating whether the alleged payment was lawfully due and owing. Id.

7        Facts cannot assert legal conclusions and impose duties required by law because facts are

8   only objectively verifiable states of being. "Fact. Something that actually exists; an aspect of real-

9   ity."—Black's Law Dictionary, 628 (8th ed. 2004). Thus, although the antecedent assertions in

10  count 3 are called "facts," they cannot withstand careful scrutiny because instead of asserting objec-

11  tive realities they assert legal conclusions and impose legal duties.[4] Since these antecedent asser-

12  tions clearly are not facts, and there are no others, count 3 has no factual predicate that could have

13  been the basis for establishing the asserted deficiency. Furthermore, with no law that could place

14  plaintiff's personal property in the abstract class "income" and with no U.S.C. section that could

15  impose a tax on such property (cf. Boulware, n. 3), count 3 cannot establish that the asserted defi-

16  ciency was determined  by an operation of law or that an operation of law required Plaintiff to pay

17  the asserted tax (n. 3). The result is that he could not have evaded the tax because the Government

18  could not prove that he owed it. Id. Moreover, without any such U.S.C. section, count 3 cannot es-

19  tablish a causal connection between Plaintiff and the purported deficiency. When the required

20  traceability cannot be established, the asserted injury cannot lawfully exist. Lujan, supra.

21       With no assertions of predicate facts or relevant law, count 3 contains no lawful injury (Whit-

22  more, supra), no causal connection and no traceability (Lujan, supra), and as a result, no cognizable

23  offense and nothing to redress. Therefore, count 3 falls way outside the case-or-controversy require-

---

24  [3] "Any deficiency determination in this case will turn on §§301 and 316(a) of the Code."—Boulware v. United

25  States, 552 U.S. ___ , 2008. Thus, for *lawful* proof that a tax deficiency exists, the case must disclose the Code sections that created it. However, section 7201 does not impose taxes (n. 2), and because count 3 does not disclose any sections that *do* impose a tax, the Government cannot prove that the alleged payment was lawfully due and owing.

26  [4] Count 3 asserts as facts ("knowing these *facts* . . .") that Plaintiff's personal property (his dollars) fell within the

27  legal definition of the generic term "income," that his property was taxable, that a tax had been imposed on it, that he owed payment of this tax (all legal conclusions), and further, that he also was "required by law . . . to prepare and file an income tax return" and "pay such income tax" (the imposition of legal duties). These assertions are all meaningless for being the

28  antecedent bases of an accusation because clearly, none of them is a fact. Therefore, count 3 cannot even establish a case or controversy to allow a potential finder of fact to determine whether these assertions could be true.

5

1    ment of Article III (Steel Co., supra), and thus cannot lawfully be part of an indictment or any other

2    type of case, such that the judgment initially *presumed* void (section 5, supra) actually *is* void.

3        **7. Counts 4 - 6, <u>evading reporting requirements</u> (Exhibit 1, pp. 6 - 9), fail to comply**

4    **with Article III.** The injury in fact (Lujan, supra) that seems to be implied by the text of counts 4 -

5    6 is that the reporting requirements of Title 31, U.S.C., §5313(a)[5] and the regulations promulgated

6    thereunder somehow lacked compliance. The crime claimed in counts 4 - 6 is that Plaintiff know-

7    ingly acted to evade these requirements, in violation of Title 31, U.S.C., §5324(a)(3),[6] but similar to

8    a violation of §7201 (section 6, supra), counts 4 - 6 must contain the ingredients required for the

9    Government to prove that Plaintiff was specifically within the ambit of §5313(a) before §5324(a)(3)

10   is applicable (n. 6). However, because Plaintiff had no requirements within the ambit of §5313(a)

11   (n. 5.), there was nothing for him to evade—which precludes §5324(a)(3) from being applied to the

12   challenged action (n. 6). Further, because of the conjectural nature of whether an injury actually did

13   occur and the lack of any definitive requirements that apply to Plaintiff, there is nothing that could

14   causally connect him (Lujan, supra) to any harm that might be inferred from within counts 4 - 6.

15   Therefore, with nothing required of Plaintiff, with no allegation that he was causally connected to

16   any palpable harm (Whitmore, supra) and with no allegation that the challenged action invaded a

17   protected interest (Lujan, supra), counts 4 - 6 fall outside the case-or-controversy requirement of

18   Article III (Steel Co., supra) and thus are not parts of an indictment or any other type of case, such

19   that the judgments initially *presumed* void (section 5, supra) actually *are* void.

20       **8. Counts 1 and 2, <u>influencing a financial institution</u> (Exhibit 1, pp. 1 - 3), fail to com-**

21   **ply with Article III.** No injury in fact (Lujan, supra) appears in counts 1 and 2 because they do not

22   allege that the challenged action invaded a protected interest. Id. Instead, these counts merely claim

23       [5] 31 U.S.C. §5313. <u>Reports on domestic coins and currency transactions</u>. (a) "When a domestic financial

24   institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or
     other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and
     denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant

25   in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Sec-
     retary prescribes. []" Plaintiff was not alleged in counts 4 - 6 to have been "any other participant in the transaction"

26   nor was he alleged to have been required to "file a report," so he was not within the ambit of §5313(a).

27       [6] 31 U.S.C. §5324. <u>Structuring transactions to evade reporting requirement prohibited</u>. (a) "Domestic Coin
     and Currency Transactions Involving Financial Institutions.--No person shall, *for the purpose of evading the report-*
     *ing requirements of section 5313(a)* [] or any regulation prescribed [there]under, (<u>3</u>) structure or assist in structuring,

28   or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." (Em-
     phasis added.) Clearly, a defendant must be within the ambit of §5313(a) before §5324(a)(3) has relevance.

1  that Plaintiff knowingly acted to influence a financial institution, but they do not allege that this in-

2  fluence resulted in the palpable harm required to establish a case or controversy (<u>Whitmore</u>, <u>supra</u>).

3       Although the Federal Deposit Insurance Corporation (FDIC) is an interest protected by

4  Title 18, U.S.C., section 1014 [7] (which, curiously, appears only in the headings of these counts,

5  and was not alleged to have been violated), a violation of §1014 does not cause palpable harm to

6  the FDIC but instead may only influence a commercial financial institution when funding a loan

7  (<u>n. 7</u>). Any potential injury to the FDIC would occur only in the future, and only if the loan fails

8  *and* requires an FDIC insurance payout. However, no such injury was alleged, nor did any such

9  injury occur, so there was no injury to which Plaintiff could have been causally connected.

10       In an attempt to overcome this fatal lack of injury in fact and causal connection (<u>Steel Co.</u>,

11  <u>supra</u>), the Government shoved the camel's nose under the edge of the tent with allegations of

12  seemingly harmful conduct to divert attention from the fact that the conduct had not created an in-

13  jury. However, because a violation of §1014, standing alone, does *not* injure the FDIC (<u>n. 7</u>), the

14  rest of the camel cannot follow. Without an allegation of concomitant harm to a protected interest,

15  a violation of §1014 is merely damnum absque injuria (damage without wrong), which Article III

16  does not allow to be the basis of a case or controversy (either civil *or* criminal) because damage

17  without wrong (<u>Alabama Power</u>, <u>infra</u>) does not result in an injury in fact (<u>Lujan</u>, <u>supra</u>).

18      "An injury, legally speaking, consists of a wrong done to a person, or, in other words,
   a violation of his right. It is an ancient maxim that a damage to one without an injury

19  in this sense (damnum absque injuria) does not lay the foundation of an action, be-
   cause, if the act complained of [here, allegedly making a false statement] does not

20  violate any of his [the Government's] legal rights [an uninjured FDIC], it is obvious
   that he has no cause [counts 1 and 2] to complain."—<u>Alabama Power Co. v. Ickes</u>,

21  302 U.S. 464, 479 (1938) (Citation omitted; [bracketed material] added)

22       Thus, the threshold Article III requirement that the challenged action result in an injury fact

23  limits enforcement of Congress's statutory protection of federal interests to the contours of the Judi-

24  ciary's constitutional power of adjudicating cases and controversies.[8] Although Congress may have

---

25      [7] 18 U.S.C. §1014. <u>Loan and credit applications generally</u>[.] "Whoever knowingly makes any false state-

26  ment or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which
   are insured by the Federal Deposit Insurance Corporation, . . . shall [receive the following penalty]." Clearly, the

27  protected interest (the FDIC) is not injured unless the action of an institution results in an insurance payout.

       [8] This conclusion results from the fact that Article III precludes the federal courts from adjudicating anything

28  but cases and controversies (<u>Allen</u>, <u>supra</u>). The Article III minima for this class include an allegation that palpable harm
   (<u>Whitmore</u>, <u>supra</u>) occurred to a legally protected interest (<u>Lujan</u>, <u>supra</u>). Any cause without this allegation cannot be

1  desired to protect the FDIC from false statements, in the context of §1014 such statements cannot

2  harm the FDIC without the intervention of an intermediary (n. 7). Further, such protection is not

3  even needed since a false statement, standing alone, cannot cause harm because it is merely words

4  on a piece of paper. The intermediary must take action based on these words that results in palpable

5  harm to the FDIC before a case or controversy can emanate from the challenged action of the defen-

6  dant. Valley Forge, supra. Although Congress did not include palpable harm as an essential ingredi-

7  ent of the violation of §1014 (n. 7), nonetheless such harm *is* an essential ingredient of the immuta-

8  ble triad (Steel Co., supra) required for invoking the constitutional power of the court to adjudicate

9  the offense. Id. Clearly, with no allegation that a defendant caused palpable harm, there is nothing

10  to which he could be causally connected—which eliminates the causal connection prong of the Ar-

11  ticle III triad required for invoking adjudication. Id. Therefore, with no allegation that Plaintiff vio-

12  lated §1014, with no allegation that he was causally connected to an injury and with no allegation

13  that palpable harm (Whitmore, supra) occurred to a legally protected interest (Lujan, supra), counts

14  1 and 2 fall outside the case-or-controversy requirement of Article III (Steel Co., supra) and thus are

15  not parts of an indictment or any other type of case, such that the judgments initially *presumed* void

16  (section 5, supra) actually *are* void.

17  **9. Plaintiff's Right to Due Process was violated.** The Government acted to violate Plain-

18  tiff's Fifth Amendment Right to Due Process by egregiously joining counts 3 - 6, known to be

19  constitutionally insufficient, with the remaining two counts, both of which were unrelated by ei-

20  ther time or circumstance and which were also known to be constitutionally insufficient (sections

21  6 - 8, supra). Thus, separate and apart from the fundamental deficiencies set forth above, "[i]t is

22  well settled that a judgment is void [] if the parties [] acted in a manner inconsistent with due

23  process of law."—Watts v. Pinckney, 752 F.2d 406, 409 (9th Cir. 1985) (citation omitted). The

24  Government's intentional misjoinder of constitutionally insufficient colorable assertions as al-

25  leged in counts 1 - 6 (sections 6 - 8, supra) is just such a manner, and adds to the reasons for

26  vacatur of the judgments rendered in the cause presented by Exhibit 1.

27  adjudicated because of the constraints imposed on the Judiciary by Article III (Steel Co. and Valley Forge, supra), even
though the cause itself (Exhibit 1) may seem to exude legitimacy. See also Data Processing Service v. Camp, 397 U.S.
28  150, 152 (1970). "The first question is whether the plaintiff alleges that the challenged action has caused him injury in
fact[.]" This allegation is the threshold requirement for invoking federal jurisdiction. Whitmore, supra.

1    Because all counts in Exhibit 1 were outside the case-or-controversy requirement of Arti-

2    cle III (sections 6 - 8, supra), the Government's cause did not constitute a cognizable case—a

3    circumstance that resulted in a total want of subject matter jurisdiction for the trial court (Allen,

4    supra). Plaintiff contends that when the whole camel with all its infirmities was summarily ush-

5    ered into the courtroom, the Government, "in its own version of the 'spaghetti approach,' []

6    heaved the entire contents of a pot against the wall in the hopes that something would stick."

7    —Independent Towers v. Washington, 350 F.3d 925 (9th Cir. 2003). The problem with Exhibit 1

8    is that nothing *could* stick because the spaghetti had missing ingredients (sections 6 - 8, supra).

9    By knowingly presenting a cause that failed to contain the facts and law required to create a via-

10   ble case, clearly the Government intended to prevail by merely dazzling the jury with the foot-

11   work. Further, the Government knew, or should have known, that the law and/or facts required to

12   create cases or controversies (Steel Co., supra) were missing from the various accusations (sec-

13   tions 6 - 8, supra) and that the cause was invalid from inception (Allen, supra). It is evident that

14   none of the challenged actions *as alleged in Exhibit 1* could result in a cognizable case under the

15   laws of the United States,[9] and that Plaintiff was and is actually innocent. Even so, the cause was

16   still knowingly presented to the court and Plaintiff was egregiously prejudiced by intentional mis-

17   joinder, which violated his Fifth Amendment Right to Due Process (Watts, supra).

18   **10. Conclusion.** Because all counts failed to comply with the case-or-controversy re-

19   quirement of Article III, Exhibit 1 cannot present a case or controversy, either civil or criminal. It

20   is merely a constitutionally insufficient cause, and further, the Government violated Plaintiff's

21   Fifth Amendment Right to Due Process. The result of these legal infirmities is that the trial court

22   suffered a complete want of jurisdiction, such that the judgments initially presumed void actually

23   are void and cannot be allowed to stand. Therefore, Plaintiff respectfully moves for the court to

24   vacate these judgments under F.R.C.P. rule 60(b)(4) because they are void.

25   **11. Redress.** Plaintiff requests that the Court order the following elements of relief:

26   1) Grant Plaintiff's motion as allowed under F.R.C.P. rule 60(b)(4) by vacating the judgments

27   _____

     [9] Neither §7201 nor §5324(a)(3) could have been violated because counts 3 - 6 fail to lawfully articulate the

28   causal connections necessary for adjudicating the antecedent questions of whether any injuries actually occurred (sec-
     tions 6, 7 supra). An alleged violation §1014, without more, cannot result in a cognizable case (section 8, supra).

1  resulting from the cause entitled case no. CR 03-337(B)-ABC because they are void.

2       2) Issue a Certificate of Innocence per 28 U.S.C. 2513.

3       3) Order expungement of Plaintiff's record of arrest and incarceration.

4       4) Order the return of any and all moneys extra-legally obtained by the Government, in-

5  cluding the $500 "special assessment" and $255 and $350 filing fees, and any "restitution."

6       5) Order the return of any and all property owned by or attributed to Plaintiff, including

7  all personal and business papers and computer disks and all copies of such items, held and/or

8  used by the Government.

9       6) Order the return to Plaintiff of his DNA blood sample taken in July, 2008 (under

10  B.O.P. number TRM01402) if it has not yet been processed, or if it has been processed, order the

11  removal of all DNA data derived therefrom from all relevant databases.

12       7) Order the removal of any and all fingerprint and photographic data from all relevant

13  databases.

14       8) Order the reimbursement of $85,000 (approximate figure) in legal fees and costs in-

15  curred by Plaintiff over the course of this litigation (Morrison v. CIR, 06-75332, 9th Cir. 5/13/09).

16       9) Order any other appropriate relief deemed applicable by the court.

17  **CLAIM II**

18  **BACKGROUND**

19       In 2003, the Government initiated a cause against Plaintiff that was insufficient for invok-

20  ing the subject matter jurisdiction of the court, which resulted in void judgments (Claim I, supra).

21  Based on one of these void judgments (section 6, supra), the Government initiated another cause to

22  recover what it erroneously claimed were moneys owed, and Exhibit 2 was the result. The cause on

23  which it is based (Exhibit 1) was insufficient for invoking the subject matter jurisdiction of the

24  court (Claim I, supra), which resulted in the void judgment that gave rise to the garnishment. Be-

25  cause the judgment resulting from Exhibit 1 is void, it could not lawfully invoke the subject matter

26  jurisdiction of the court for the purpose of ordering the garnishment. The result is that the judgment

27  in cause no. CV 05-02542-ABC is void because the allegation brought to the court for invoking its

28  subject matter jurisdiction was void. Even so, the court issued the Order of Garnishment (Exhibit

10

1  2) to divert payments owed to Plaintiff by a company with which he was involved at the time.

2  Plaintiff files this motion because the order is void.

3                                    **ARGUMENT**

4      **Whether the judgment (order) in cause no. CV 05-02542-ABC is void.**

5      **1. A judgment is void when the underlying cause lies outside the subject matter ju-**

6  **risdiction of the court.** Burnham v. Superior Court, 495 U.S. 604, 608 (1990). To fall within the

7  court's jurisdiction, the cause must present a case or controversy. Allen v. Wright, 468 U.S. 737,

8  750 (1984). This case or controversy must include an injury in fact proven valid by the propound-

9  ing party. Steel Co. v. Citizens for a Better environment, 523 U.S. 83, 103 (1998). When this

10 component cannot been proven present, the cause is not a case (or controversy).

11      The payment allegedly due and owing that was used to initiate the garnishment ordered

12 by Exhibit 2 resulted from a void judgment. Section 6, supra. This void judgment had no force or

13 effect because it is a nullity, and because it is a nullity, the alleged requirement for payment re-

14 sulting therefrom was invalid. Therefore, the judgment (order) of garnishment resulting from the

15 adjudication of this invalid cause is void because the court has no authority under Article III to

16 adjudicate a cause that was created by a nullity (Steel Co., supra).

17      **2. Redress.** Plaintiff requests that the Court order the following element of relief:

18      Grant Plaintiff's motion as allowed under F.R.C.P. rule 60(b)(4) by vacating the judgment

19 (order) resulting from the cause entitled case no. CV 05-02542-ABC because it is void.

20

21                                    Respectfully Submitted,

22

23                                    John Hobart Zentmyer
                                      Plaintiff Pro Se

24                                    June 23, 2009

25

26

27

28

                                          11

FILED

04 OCT -6 PM 12: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2004 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 03-337(B)-ABC |
| Plaintiff, | ) | SECOND SUPERSEDING |
| | ) | I N D I C T M E N T |
| v. | ) | |
| | ) | [18 U.S.C. § 1014: False |
| JOHN HOBART ZENTMYER, | ) | Statement to Financial |
| | ) | Institution; 26 U.S.C. |
| Defendant. | ) | § 7201: Income Tax Evasion; |
| | ) | 31 U.S.C. § 5324(a)(3),(d)(1): |
| | ) | Structuring Financial |
| | ) | Transactions; 18 U.S.C. § 2(b): |
| | ) | Causing an Act to be Done] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1014, 2(b)]

On or about May 6, 1996, in Orange County, within the

Central District of California and elsewhere, defendant JOHN

HOBART ZENTMYER knowingly caused to be made false statements for

the purpose of influencing the actions of World Savings and Loan

Association, the accounts of which were then insured by the

AS:jf

**Exhibit 1**
Page 1

1  Federal Deposit Insurance Corporation, in the following manner:
2  Defendant JOHN ZENTMYER caused to be submitted a loan application
3  in the name of Marlene Ackerman for the purchase of property
4  located at 17761 Anglin Lane, Tustin, California, which contained
5  false information and false documentation regarding Marlene
6  Ackerman's income, specifically, a letter dated May 6, 1996 from
7  William Cole which stated that Marlene Ackerman was employed by
8  Powertrax and was earning $4,800 per month.  In truth and in
9  fact, as defendant ZENTMYER then knew, Marlene Ackerman was not
10 employed by Powertrax and was not earning $4,800 per month.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Exhibit 1

Page 2

COUNT TWO

[18 U.S.C. §§ 1014, 2(b)]

On or about May 16, 1996, in Orange County, within the Central District of California and elsewhere, defendant JOHN HOBART ZENTMYER knowingly caused to be made false statements for the purpose of influencing the actions of World Savings and Loan Association, the accounts of which were then insured by the Federal Deposit Insurance Corporation, in the following manner: Defendant JOHN ZENTMYER caused to be submitted a loan application in the name of Marlene Ackerman for the purchase of property located at 17761 Anglin Lane, Tustin, California, which contained false information and false documentation regarding the source of the down payment for the purchase of the property, specifically, a letter dated April 23, 1996 which stated that May Zentmyer was giving her daughter, Marlene Ackerman, a gift of $70,000 for the purchase of the property, and documentation regarding an account in which these funds were purportedly being held.  In truth and in fact, as defendant ZENTMYER then knew, Marlene Ackerman was not May Zentmyer's daughter and May Zentmyer was not giving a gift of $70,000 for the purchase of the property.

**Exhibit 1**

Page 3

COUNT THREE

[26 U.S.C. § 7201]

During the calendar year 1996, in Los Angeles County, within the Central District of California, defendant JOHN HOBART ZENTMYER had and received a taxable income of approximately $829,032 and upon that taxable income owed to the United States of America an income tax of approximately $299,495; defendant was required by law on or before April 15, 1997, to prepare and file an income tax return with the Internal Revenue Service and to pay such income tax.

Knowing these facts, defendant JOHN HOBART ZENTMYER, on or about April 15, 1997, within the Central District of California, did willfully and knowingly attempt to evade and defeat the above stated income tax due and owing by him to the United States of America for the calendar year 1996 by failing to file an income tax return on or before April 15, 1997, as required by law, to any proper officer of the Internal Revenue Service; failing to pay the income tax to the Internal Revenue Service; and concealing and attempting to conceal from all proper officers of the United States his true and correct taxable income by:

(a) attempting to conceal the sources of his income;

(b) attempting to conceal the nature, extent and location of his assets;

(c) placing funds in nominee accounts;

(d) depositing funds in offshore bank accounts; and

(e) conducting financial transactions through the use of large amounts of cash.

The likely effect of the above acts would be to mislead or

**Exhibit 1**

Page 4

1  to conceal his income, in violation of Title 26, United States

2  Code, Section 7201.

3       The Grand Jury further alleges the following with respect to

4  Count Three of the Second Superseding Indictment:

5  <u>Tax Loss</u>

6       The tax loss, exclusive of interest and penalties, that was

7  the object of this offense is at least $200,001.

8  <u>Sophisticated Means</u>

9       Defendant JOHN HOBART ZENTMYER used sophisticated means to

10  impede discovery of the existence and extent of this offense.

11  The sophisticated means used by defendant ZENTMYER included the

12  use of offshore bank accounts; the use of bank accounts held in

13  the names of another person, corporations, and other entities;

14  and the conducting of financial transactions using large amounts

15  of cash.

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 1**

Page 5

COUNT FOUR

[31 U.S.C. § 5324(a)(3), (d)(1)]

On or about the dates listed below, in Orange County, within the Central District of California and elsewhere, defendant JOHN HOBART ZENTMYER, did knowingly and for the purpose of evading the reporting requirements of section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure the following transactions with domestic financial institutions, to wit, five withdrawals of currency in the amounts listed below, from the bank account of LR Industries Trust Convenience account, number 34-026-432-70, at California Bank and Trust, formerly known as Sumitomo Bank of California, in violation of Title 31, United States Code, Section 5324(a)(3):

| Date | Amount | Description |
|---|---|---|
| 4/12/1999 | $8,500 | Cashed Check No. 1098 payable to "Cash" |
| 4/14/1999 | $9,000 | Cashed Check No. 1099 payable to "Cash" |
| 4/16/1999 | $8,000 | Cashed Check No. 1101 payable to "Cash" |
| 4/22/1999 | $4,000 | Cashed Check No. 1102 payable to "Cash" |
| 4/29/1999 | $5,000 | Cashed Check No. 1103 payable to "Cash" |

**Exhibit 1**

Page 6

### COUNT FIVE

#### [31 U.S.C. § 5324(a)(3), (d)(1)]

On or about the dates listed below, in Orange County, within the Central District of California and elsewhere, defendant JOHN HOBART ZENTMYER, did knowingly and for the purpose of evading the reporting requirements of section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure the following transactions with domestic financial institutions, to wit, four withdrawals of currency in the amounts listed below, from the bank account of LR Industries Trust Convenience account, number 34-026-432-70, at California Bank and Trust, formerly known as Sumitomo Bank of California, in violation of Title 31, United States Code, Section 5324(a)(3):

| Date | Amount | Description |
|------|--------|-------------|
| 11/16/1999 | $9,000 | Cashed Check No. 1114 payable to "Cash" |
| 11/19/1999 | $9,000 | Cashed Check No. 1115 payable to "Cash" |
| 12/15/1999 | $9,000 | Cashed Check No. 1116 payable to "Cash" |
| 12/22/1999 | $2,000 | Cashed Check No. 1117 payable to "Cash" |

### Exhibit 1

Page 7

COUNT SIX

[31 U.S.C. § 5324(a)(3), (d)(1)]

On or about the dates listed below, in Orange County, within the Central District of California and elsewhere, defendant JOHN HOBART ZENTMYER, did knowingly and for the purpose of evading the reporting requirements of section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure the following transactions with domestic financial institutions, to wit, five withdrawals of currency in the amounts listed below, from the bank account of LR Industries Trust Convenience account, number 34-026-432-70, at California Bank and Trust, formerly known as Sumitomo Bank of California, in

**Exhibit 1**

Page 8

violation of Title 31, United States Code, Section 5324(a)(3):

| Date | Amount | Description |
| --- | --- | --- |
| 9/18/2000 | $7,500 | Cashed Check No. 1131 payable to "Cash" |
| 9/18/2000 | $2,000 | Cashed Check No. 1132 payable to "Cash" |
| 9/19/2000 | $4,500 | Cashed Check No. 1135 payable to "Cash" |
| 9/20/2000 | $6,000 | Cashed Check No. 1136 payable to "Cash" |
| 9/21/2000 | $6,000 | Cashed Check No. 1138 payable to "Cash" |

A TRUE BILL

_____
Foreperson

DEBRA W.  YANG
United States Attorney

*Sally L Meloch*

SALLY L. MELOCH
Assistant United States Attorney
Acting Chief, Criminal Division

ALKA SAGAR
Assistant United States Attorney
Deputy Chief, Major Frauds Section

JILL FEENEY
Assistant United States Attorney
Major Frauds Section

**Exhibit 1**

Page 9

1  DEBRA W. YANG
   United States Attorney
2  LEON W. WEIDMAN
   Assistant United States Attorney
3  Chief, Civil Division
   BRENT A. WHITTLESEY
4  Assistant United States Attorney
   brent.whittlesey@usdoj.gov
5  California Bar Number:
        Room Federal Building
6       300 North Los Angeles Street
        Los Angeles, California 90012
7       Telephone: (213) 894-2445
        Facsimile: (213) 894-5900
8
   Attorney for Plaintiff
9  United States of America

10
11                    UNITED STATES DISTRICT COURT
12            FOR THE CENTRAL DISTRICT OF CALIFORNIA
13                        WESTERN DIVISION
14  UNITED STATES OF AMERICA,      ) No. CV 05-2542-ABC
                                   )
15            Plaintiff,           ) (PROPOSED)
                                   ) FINAL ORDER OF GARNISHMENT
16            v.                   )
   JOHN ZENTMYER,                  )
17                                 )
                                   )
18            Defendant.           )
                                   )
19  _____)

20
21        The writ of garnishment, directed to garnishee Carrizo Gorge

22  Railway, Inc. ("Carrizo") has been duly issued and served upon

23  the garnishee.  Pursuant to the writ of garnishment, Carrizo has

24  advised the United States that it is indebted to the defendant,

25  John Zentmyer ("Zentmyer") pursuant to an Unsecured Promissory

26  Note dated December 22, 2004 ("Note") in the original principal

27  amount of $545,000.

28        The writ and the answer of garnishee were served on

## Exhibit 2

**Page 1**

1  Zentmyer, and Zentmyer has filed no objection to the writ or the

2  answer.

3      Whereupon the Court now finds that the entry of the final

4  order of garnishment is, in all respects, proper.

5      IT IS THEREFORE ORDERED that the Garnishee pay the sum of

6  $264,835 to plaintiff, with payments made each month in

7  accordance with the Note until the full amount of $264,835 has

8  been paid.

9

10 DATED: May $i C$ , 2005

                                AUDREY COLLINS

11

12                              _____
                                    HON. AUDREY B. COLLINS
13                              United States District Judge

    Submitted by,
14
    DEBRA W. YANG
15  United States Attorney

16  LEON W. WEIDMAN
    Assistant United States Attorney
17  Chief, Civil Division

18  _____
19  BRENT A. WHITTLESEY
    Assistant United States Attorney
20
    Attorneys for Plaintiff
21  United States of America

22

23

24

25

26

27

28                          2

**Exhibit 2**
**Page 2**